# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 13-91315-E-07 |
| APPLEGATE JOHNSTON, INC., | |
| Debtor. | |
| MICHAEL D. McGRANAHAN, Trustee, | Adv. Proc. No. 15-9047 |
| Plaintiff, | |
| v. | |
| INTEGRATED COMMUNICATIONS SYSTEMS, | |
| Defendant. | |

**SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS
OF LAW TO THOSE STATED ON THE RECORD AT THE
FEBRUARY 23, 2017 FINAL DAY OF TRIAL**

On February 23, 2017, at the final day of the Trial in the above captioned Adversary Proceeding between Michael McGranahan, the Plaintiff-Trustee ("Plaintiff-Trustee"), and Integrated Communications Systems, Inc., the Defendant ("Defendant-ICS"), the court orally stated the findings of fact and conclusions of law determined by the court in granting judgment for the Plaintiff-Trustee and against Defendant-ICS. Fed. R. Bankr. P. 52(a) and Fed. R. Bankr. P. 7052. The court determines that the two payments totaling $71,197.32 made to Defendant-ICS are avoided as preferences pursuant to 11 U.S.C. § 547(b) and a monetary judgment is awarded Plaintiff-Trustee against Defendant-ICS in that amount pursuant to 11 U.S.C. § 550. In this Adversary Proceeding

many of the facts were determined not to be in material dispute pursuant to Federal Rule of Civil Procedure 56(g) and Federal Rule of Bankruptcy Procedure 7056 (collectively "Rule 56(g)"). In announcing the ruling, the court summarized the facts as determined in this Adversary Proceeding rather than repeating them verbatim, advising the Parties that this supplement to the record incorporating the court's order determining such facts and the Parties' stipulation to additional facts will be filed and made a part of the court's formal ruling.

Attached hereto and incorporated herein as Addendum "A" is a copy of the court's order filed on July 11, 2016, Dckt. 31, making specific findings pursuant to Rule 56(g). Additionally, attached hereto as Addendum "B" is the additional Stipulation of Facts filed on June 1, 2016, Dckt. 23, of the Parties in this Adversary Proceeding. The court incorporates into and supplements the oral record stated at the February 23, 2017 trial in this Adversary Proceeding both Addendum "A" and Addendum "B."

At the trial, the court did not clearly state (not finding them in the court's notes) the specific California Civil Code provisions relating to the providing the preliminary notice for a person to have enforceable stop notice rights. As stated at the hearing, the court concluded that no such preliminary notice was given by Defendant-ICS. Further, if the court accepts the two waivers provided by Defendant-ICS as being done in lieu of providing, and being treated as, such preliminary notices, the court did not have evidence of the work or materials provided by Defendant-ICS during the twenty-day period prior to the notice and thereafter provided by Defendant-ICS for the two checks received. For clarity of the record, the court advised the parties that those sections relied upon by the court will be clearly stated in this Supplemental to the Findings of Fact and Conclusions of Law.

The contract upon which Defendant-ICS asserts that there is an independent obligation of Bogard Construction, Inc. to make the two payments is the document titled "Construction Labor and Material Payment Bond ("Obligation Document"). Defendant's Exhibit B. Because the Obligation Document was issued in 2011 (with the California Civil Code provisions relating to stop notices revised and renumbered in 2012) and the payments made in 2013, the court has to review the statutes in effect in 2011 to properly ascertain the meaning of the obligation of Bogard Construction, Inc., the general contractor. The Obligation Document provision at issue, Paragraph 3, as addressed

in the oral ruling provides:

> 3. With respect to Claimants [Defendant-ICS], this **obligation shall be null and void if Contractor promptly makes payment** directly or indirectly **through its Subcontractors**, for all sums due Claimants, If **Contractor** [Bogard Construction, Inc.] or its Subcontractors, however, **fail to pay any of the persons named in Section 3181 of the California Civil Code**, or amounts due under the Unemployment Insurance Code with respect to Work or labor performed under the Contract, or for any amounts required to be deducted, withheld, and paid over to the Employment Development Department from the wages of employees of Contractor or Subcontractors pursuant to Section 13020 of the Unemployment Insurance Code, with respect to such Work and labor, then Surety shall pay for the same, and also, in case suit is brought upon this Bond, a reasonable attorney's fee, to be fixed by the court.

Defendant's Exhibit B (emphasis added).

California Civil Code § 3181, repealed 2012, in effect at the time of the issuance of the Obligation Document upon which Defendant-ICS asserts the existence of an independent obligation of the general contractor for the two payments made that are the subject of this Adversary Proceeding, provides:

> § 3181.  (Repealed July 1, 2012) Persons entitled
>
> > Except for an original contractor, any person mentioned in Section 3110, 3111, or 3112, or in Section 4107.7 of the Public Contract Code, or furnishing provisions, provender, or other supplies, may serve a stop notice upon the public entity responsible for the public work in accordance with this chapter.

This section has been replaced by current (in effect in 2013) Civil Code § 9100, which provides:

> § 9100.  Persons entitled to give stop payment notice
>
> > (a) Except as provided in subdivision (b), any of the following persons that have not been paid in full may give a stop payment notice to the public entity or assert a claim against a payment bond:
> >
> > > (1) A person that provides work for a public works contract, if the work is authorized by a direct contractor, subcontractor, architect, project manager, or other person having charge of all or part of the public works contract.
> > >
> > > (2) A laborer.
> > >
> > > (3) A person described in Section 4107.7 of the Public Contract Code.
> >
> > (b) A direct contractor may not give a stop payment notice or assert a claim against a payment bond under this title.

3

California Civil Code § 8204 specifies the requirements for a creditor, such as Defendant-ICS, to have enforceable rights against the general contractor, here Bogard Construction, Inc., which would create an independent obligation for Bogard Construction, Inc. to pay Defendant-ICS for the materials and services provided. For Defendant-ICS to have such enforceable rights and create an independent obligation for Bogard Construction, Inc. to pay Defendant-ICS, Civil Code § 8204 (emphasis added) requires Defendant-ICS to have given a preliminary notice:

> California Civil Code § 8204. Time for preliminary notice
>
> (a) A preliminary notice shall be given **not later than 20 days after the claimant has first furnished work on the work of improvement**. If work has been provided by a claimant who did not give a preliminary notice, that claimant shall not be precluded from giving a preliminary notice at any time thereafter. The claimant shall, however, be entitled to record a lien, **give a stop payment notice**, and **assert a claim against a payment bond only for work performed within 20 days prior to the service of the preliminary notice, and at any time thereafter**.
>
> (b) A design professional who has furnished services for the design of the work of improvement and who gives a preliminary notice not later than 20 days after the work of improvement has commenced shall be deemed to have complied with Section 8200 with respect to the design services furnished, or to be furnished.

The requirement for the preliminary notice is amplified in California Civil Code § 8200(c) (emphasis added) provides that the requirement for providing the preliminary notice is a condition precedent to a claimant having enforceable stop notice rights.

> § 8200. Notice prior to recording lien claim, giving stop payment notice, or asserting claim against payment bond; Persons entitled to notice; Compliance with specified provisions
>
> (a) Except as otherwise provided by statute, before recording a lien claim, giving a stop payment notice, or asserting a claim against a payment bond, a **claimant shall give preliminary notice to the following persons**:
>
>    (1) The owner or reputed owner.
>
>    (2) The **direct contractor** or reputed direct contractor **to which the claimant provides work**, either directly or **through one or more subcontractors**.
>
>    (3) The construction lender or reputed construction lender, if any.
>
> (b) The notice shall comply with the requirements of Chapter 2 (commencing with Section 8100) of Title 1.

///

///

4

> (c) **Compliance with this section is a necessary prerequisite to the validity of a** lien claim or **stop payment notice under this title**.
>
> (d) **Compliance** with this section or with Section 8612 **is a necessary prerequisite to the validity of a claim against a payment bond** under this title.
>
> (e) Notwithstanding the foregoing subdivisions:
>
>> (1) A laborer is not required to give preliminary notice.
>>
>> (2) A claimant with a direct contractual relationship with an owner or reputed owner is required to give preliminary notice only to the construction lender or reputed construction lender, if any.

Former California Civil Code § 3097(a) and (b) (emphasis added), in effect at the time the Obligation Document was issued, stated the similar requirement of giving a preliminary notice as a condition precedent to having enforceable stop notice rights:

> § 3097. (Repealed July 1, 2012) "Preliminary 20-day notice (private work)"; Procedure
>
>> "Preliminary 20-day notice (private work)" means a written notice from a claimant that is given prior to the recording of a mechanic's lien, prior to the filing of a stop notice, and prior to asserting a claim against a payment bond, and is required to be given under the following circumstances:
>>
>> (a) Except one under direct contract with the owner or one performing actual labor for wages as described in subdivision (a) of Section 3089, or a person or entity to whom a portion of a laborer's compensation is paid as described in subdivision (b) of Section 3089, every person who furnishes labor, service, equipment, or material for which a lien or payment bond otherwise can be claimed under this title, or for which a notice to withhold can otherwise be given under this title, shall **as a necessary prerequisite to the validity of any claim of** lien, **payment bond, and of a notice to withhold**, **cause to be given** to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any**, a written preliminary notice as prescribed by this section**.
>>
>> . . . .

Former California Civil Code § 3098 (repealed July 1, 2012) defined the term "Laborer" to mean a person acting as an employee on any work of improvement or an express trust fund described in California Civil Code § Section 3111.

In making its ruling in the Adversary Proceeding, the court also referenced the parties to the California Commercial Code as it relates to negotiable instruments – the two joint checks at issue. As stated by the court, the checks being made jointly payable to Applegate Johnson, the Debtor, and

5

Defendant-ICS did have legal significance and created rights and interests of the Debtor in said checks. The California Commercial Code Sections specifying the rights and interests of joint payees on a check, and the corresponding obligation on the person issuing the check, include the following:

> California Commercial Code § 3110.  Specified payees
>
>> (a) The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person. If more than one person signs in the name or behalf of the issuer of an instrument and all the signers do not intend the same person as payee, the instrument is payable to any person intended by one or more of the signers.
>> . . .
>>
>> (c) A person to whom an instrument is payable may be identified in any way, including by name, identifying number, office, or account number. For the purpose of determining the holder of an instrument, the following rules apply:
>>
>>> (1) If an instrument is payable to an account and the account is identified only by number, the instrument is payable to the person to whom the account is payable. If an instrument is payable to an account identified by number and by the name of a person, the instrument is payable to the named person, whether or not that person is the owner of the account identified by number.
>>
>> . . .
>>
>> (d) If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

As addressed in the Official Comment to Uniform Commercial Code Section 3-110 (emphasis added):

> 4. Subsection (d) replaces former Section 3-116. An instrument payable to X or Y is governed by the first sentence of subsection (d). An instrument payable to X and Y is governed by the second sentence of subsection (d). If an instrument is payable to X or Y, either is the payee and if either is in possession that person is the holder and the person entitled to enforce the instrument. Section 3-301. **If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. Neither person, acting alone, can be the holder of the instrument.** The instrument is "payable to an identified person." **The "identified person" is X and Y acting jointly**. Section 3-109(b) and Section 1-102(5)(a). Thus, under Section 1-201(20) **X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is**

**the identified person stated in the instrument.**

The court adopts the forgoing as part of, and in addition to, the findings of fact, conclusions of law, and Ruling of the court stated on the record at the continued trial on February 23, 2017.

Dated: March 07, 2017

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

# ADDENDUM "A"




# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>APPLEGATE JOHNSTON, INC.,<br><br>        Debtor.<br>_____<br><br>MICHAEL D. McGRANHAN,<br>Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>v.<br><br>INTEGRATED COMMUNICATIONS SYSTEMS,<br><br>        Defendant.<br>_____ | Case No. 13-91315-E-7<br><br><br><br><br><br>Adv. Proc. No. 15-9047<br>Docket Control No. NHA-1 |

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT
### AND IN THE ALTERNATIVE
### DETERMINING MATERIAL FACTS NOT IN DISPUTE

The Motion for Summary Judgment filed by ICS Integrated Communication Systems, Defendant, having been presented to the court; Findings of Fact and Conclusions of Law being stated in the Civil Minutes for the hearing; upon review of the pleadings, evidence, arguments of counsel; and good cause appearing,

**IT IS ORDERED** that the Motion for Summary Judgment is denied.

**IT IS FURTHER ORDERED** that Partial Summary Judgment (Fed. R. Civ. P. 56(g), Fed. R. Bankr. P. 7056) is granted and the following material facts are not genuinely in dispute and treated as established in this Adversary Proceeding:

A. ICS Integrated Communication Systems ("Defendant") is a construction-contracting firm that installs and supports communications systems in buildings, such as those used for fire-and-life safety, security, audio-video, voice-data and IT support.

B. Defendant entered into a 5-page written subcontract with Applegate Johnston, Inc. ("Debtor") effective 7/25/2012, for work to be done at the Northside Branch Library project. The contract designated Debtor to be the 'Contractor' and Defendant to be the 'Subcontractor.'

C. The general contractor on the Northside Branch Library project was another entity, Bogard Construction Co., Inc. Debtor was a subcontractor on that project to Bogard Construction Inc., which made Defendant a sub-subcontractor.

D. Bogard Construction, Inc., as general contractor, executed a Construction Labor and Material Payment Bond for the Northside Branch Library project. In that bond Bogard bound itself 'to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract' where its subcontractors did not make such payments. That obligation extended to 'An individual or entity having a direct contract with Contractor or with a subcontractor of Contractor to furnish labor, materials or equipment for use in the performance of the Contract.'

E. Defendant became suspicious of Debtor's viability not long after ICS commenced work under its contract with Debtor. Defendant expressed these concerns to the general contractor Bogard Construction, Inc.

F. In this adversary proceeding Michael D. McGranahan, as Chapter 7 Trustee for Debtor, seeks to void as preferential transfers and to recover two transfers allegedly made from Debtor to Defendant: transfer number 898-0001 made May 13, 2013 in the amount of $21,059.66 and transfer number 232-0001 made June 26, 2013 in the amount of $50,137.66.

G. The transfers of funds in those amounts were made at those times, but the funds transferred were funds of the general contractor Bogard Construction, Inc. The two transfers were made by checks on the account of the general contractor on the project, Bogard Construction, Inc., and made payable jointly to Debtor and to Defendant.

H. The checks were issued by the general contractor as payments for amounts invoiced Defendant to Debtor in the exact same amounts [Exhibits D and E, Dckt. 17], where Debtor could not make payment on them.

I. Debtor endorsed the checks over to Defendant to evidence its intent that the money should go to Defendant. Defendant deposited the full amount of those checks in its account, and those funds were accordingly transferred directly from Bogard Construction, Inc.'s bank account to Defendant's bank account.

J. Debtor never did deposit or otherwise come to possess any of the funds that were thereby transferred by those two checks. Debtor could not have deposited those funds into its own account without Defendant having endorsed the checks over to Debtor. Conversely, Defendant could not have deposited those funds into its account without Debtor having endorsed the checks over to Defendant.

K. The checks were made out jointly to enable Debtor to approve the amounts being invoiced under the terms of the applicable subcontract, and to document Debtor's agreement to and acquiescence in those payments being so made.

L.  Along with the invoices for the amounts ultimately paid by Bogard Construction, Inc. in the two transfers at issue in this Adversary Proceeding, Defendant submitted conditional waivers of its lien rights with respect to the work done for those amounts. Those waivers were conditioned upon receipt by Defendant of the amounts in question. Bogard Construction, Inc.'s payment of those amounts activated those waivers of lien rights and made those waivers effective.

M.  Apart from the two checks issued by Bogard Construction, Inc. as discussed above [Exhibits G and H, Dckt. 17], Defendant received no other payments or transfers from Debtor in the 90 days before Debtor filed for bankruptcy.

N.  Bogard Construction, Inc. entered into a construction contract to build a project known as the Northside Branch Library, Debtor was a commercial construction contractor that acted as a subcontractor to Bogard Construction, Inc. on the Northside Branch Library project.

O.  Debtor then entered into a sub-subcontract with Defendant in 2012.

P.  Defendant acknowledges that it had no written contract of its own, directly with Bogard Construction, Inc.

Q.  Defendant does, however, claim to be an intended, third-party beneficiary of promises made by Bogard Construction, Inc. in a Construction Labor And Materials Payment Bond dated June 18, 2012 (Exhibit B, Dckt. 17).

Dated: July 10, 2016

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

3

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| Debtor(s) | Attorney for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Daniel L. Egan<br>400 Capitol Mall, 22nd Flr.<br>Sacramento, CA 95814 | Stephen W. Cusick<br>100 Smith Ranch Road, #350<br>San Rafael, CA 94903 |

# ADDENDUM "B"

4  PAGES

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
DANIEL L. EGAN (SBN 142631)
degan@wilkefleury.com
STEVEN J. WILLIAMSON (SBN 238869)
swilliamson@wilkefleury.com
ANTHONY R. EATON (SBN 238070)
aeaton@wilkefleury.com
400 Capitol Mall, Twenty-Second Floor
Sacramento, California 95814

Telephone:    (916) 441-2430
Facsimile:    (916) 442-6664

Attorneys for Chapter 7 Trustee and Plaintiff
MICHAEL D. McGRANAHAN

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | |
|---|---|
| In re<br><br>APPLEGATE JOHNSTON, INC.,<br><br>Debtor. | Case No. 2013-91315-E-7 |
| MICHAEL D. McGRANAHAN, Trustee,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED COMMUNICATIONS SYSTEMS,<br><br>Defendant. | Adversary Proceeding No. 15-09047<br><br>NHA-1<br><br>DATE: June 16, 2016<br>TIME: 10:30 a.m.<br>DEPT: E (Modesto) |

### STIPULATION TO FACTS

Plaintiff Michael D. McGranahan, Chapter 7 Trustee and Plaintiff herein ("Plaintiff") and Defendant ICS Integrated Communications Systems, Inc ("Defendant") hereby stipulate to the following facts for use in all aspects of this case.

1. Bogard Construction, Inc. ("Bogard") entered into a construction contract to build a project known as the Northside Branch Library. Applegate Johnston, Inc. ("Debtor") was

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

1456528.1                                    -1-
STIPULATION TO FACTS

a commercial construction contractor that acted as a subcontractor to Bogard on the Northside Branch Library project. Debtor then entered into a sub-subcontract with Defendant in 2012. Defendant acknowledges that it had no written contract of its own, directly with Bogard. Defendant does, however, claim to be an intended, third-party beneficiary of promises made by Bogard in a Construction Labor And Materials Payment Bond dated June 18, 2012 (Defendant's Exhibit B).

DATED: May 31, 2016

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP

By: _____
DANIEL L. EGAN
Attorneys for Chapter 7 Trustee/Plaintiff
MICHAEL D. McGRANAHAN

DATED: May 31, 2016

NIELSEN, HALEY & ABBOTT, LLP

By: _____
Stephen Cusick
Attorneys for Defendant ICS Integrated Communications Systems

# Instructions to Clerk of Court
**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Daniel L. Egan<br>400 Capitol Mall, 22nd Flr.<br>Sacramento, CA 95814 | Stephen W. Cusick<br>100 Smith Ranch Road, #350<br>San Rafael, CA 94903 |